UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SCOTT DINGWALL,

        Plaintiff,

    v.

NIAGARA COUNTY SHERIFF'S OFFICE
et al.,

        Defendants.

24-CV-1134-LJV
ORDER

The pro se plaintiff, Scott Dingwall, was a pretrial detainee at the Niagara County Jail[1] when he commenced this action.  He asserts claims under 42 U.S.C. § 1983, alleging that his constitutional rights were violated during two incidents involving local law enforcement.  Docket Item 1.  Dingwall also has filed a motion to proceed in forma pauperis ("IFP")—that is, as someone who should have the prepayment of the ordinary filing fee waived because he cannot afford it.[2]  Docket Item 5.

Because Dingwall meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization and certification, Docket Item 5, the Court grants his

---

[1] New York State Department of Corrections and Community Supervision ("DOCCS") records, of which the Court may take judicial notice, *see Lynch v. County of Herkimer*, 2024 WL 2804839, at *3 (N.D.N.Y. Feb. 14, 2024), indicate that Dingwall was taken into DOCCS custody after he commenced this action, *see* DOCCS Inmate Locator, https://nysdoccslookup.doccs.ny.gov/ (last visited May 11, 2026).

[2] Dingwall initially filed his complaint without paying the required fees or moving to proceed IFP, so the Court administratively terminated the case.  Docket Item 3.  In that order, the Court informed Dingwall that if he wished to reopen the action, he was required either to pay the fees or submit a properly supported IFP motion.  *See id.*  Dingwall then timely moved to proceed IFP.  Docket Item 5.

motion to proceed in forma pauperis.  Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), the Court screens the complaint.

For the reasons that follow, some of Dingwall's claims may proceed to service and others are dismissed, but Dingwall may file an amended complaint correcting certain deficiencies identified below.

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  A court will dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the complaint (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2).

Generally, the court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A pro se complaint is to be read liberally.  Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (emphasis omitted) (quoting *Gomez*, 171

2

F.3d at 795)).  But leave to amend pleadings may be denied when any amendment would be "futile."  *See Cuoco*, 222 F.3d at 112.

## I.      SCREENING THE COMPLAINT

In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  Although "a court is obliged to construe [pro se] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a pro se complaint "must plead 'enough facts to state a claim to relief that is plausible on its face,'" *Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In other words, although a pro se complaint need not provide every last detail in support of a claim, it must allege some facts that support the claim.  *See id.* (concluding that district court properly dismissed pro se complaint under section 1915(e)(2) because complaint did not meet pleading standard in *Twombly* and *Iqbal*).  And even pro se pleadings must meet the requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004), and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

Dingwall has sued the Niagara County Sheriff's Office, the Niagara County Medical Department, the Town of Lewiston Police Department, the Town of Niagara Police Department, Town of Lewiston Police Officer King, and Town of Niagara Police Officer A. Mahmood.[3]  A liberal reading of the complaint tells two seemingly unrelated stories: one involving the death of Dingwall's brother following Dingwall's arrest and the second involving an alleged hit-and-run by defendant Mahmood.

A.    **Death of Dingwall's Brother**

Sometime in late April or early May 2024, Dingwall was arrested by Lewiston Police Officer King and brought to the Niagara County Jail.  Docket Item 1 at 4-5, 12.[4] Dingwall "told . . . King . . . that [Dingwall's] brother needed 24 [hour] care" because of a traumatic brain injury.  *Id.* at 4-5.  "[King] said he was aware and he would have [Dingwall's] brother looked after."  *Id.* at 5.  Moreover, once Dingwall "was taken in[to] custody, [he] informed the [intake] officer, as well as the medical department[,] to contact [Dingwall's] family [or the] office of the aging to protect [his] brother."  *Id.* at 4. "[T]hey"—presumably the intake officer and the individuals from the medical department

---

[3] The caption lists each of these defendants, Docket Item 1 at 1, but the "The Defendant(s)" section of the complaint identifies the Niagara County Sheriff's Office and Niagara County Medical Department as one defendant; the Town of Lewiston Police Department and King as one defendant; and the Town of Niagara Police Department and Mahmood as one defendant.  *See id.* at 2-3.  The Court liberally construes the complaint as being brought against each of the defendants listed in the caption.

[4] Dingwall attached two documents to the complaint, each of which appears to be a Notice of Claim relating to one of the incidents.  *See* Docket Item 1 at 12-13.  Because a complaint is deemed to include "any written instruments attached to it," *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004), the Court will consider both documents in evaluating Dingwall's claims.  Throughout this order, page numbers in docket citations refer to ECF pagination.

with whom Dingwall spoke—"said they would take care of it." *Id.*  In fact, the Town of Lewiston Police Department and Niagara County Sheriff's Office were "well aware" of Dingwall's brother's condition because they had been called to Dingwall's residence, where his brother apparently also lived, on numerous occasions. *Id.* at 12.  On May 2, 2024, Dingwall returned home from the Niagara County Jail and found his brother dead. *Id.*

When Dingwall told the Town of Lewiston Police Department about his brother's death, the police "know they were wrong" and "apologized numerous times." *Id.* at 5. But when Dingwall said that "the police . . . [we]re responsible" for his brother's death and that he was going to a file a claim, he was told "to figure it out in court." *Id.*  At some point later, "once [Dingwall] was remanded in custody," several correctional officers at the Niagara County Jail who "knew about the situation apologized." *Id.*

The death of Dingwall's brother "is a contributing factor" to Dingwall's numerous arrests. *Id.*  Dingwall seeks $750,000 in damages for the death of his brother because his "brother was the only sibling whom [he] was close to[, Dingwall] took care of him[, and Dingwall] miss[es] [his brother] to this day." *Id.* at 5.

### B.    Hit-and-Run

The next month, in June 2024, Dingwall was visiting his girlfriend in the Town of Niagara when a police vehicle pulled up and the police "harassed [him] and [his] girlfriend." *Id.* at 13.  The officer in the vehicle, Mahmood, ran Dingwall's name for a warrant check and told Dingwall that he was free to leave. *Id.*  Dingwall rode away on his e-bike, but the police vehicle pursued him with no emergency lights on for about a mile and intentionally hit him. *Id.* at 4-5, 13.

5

Dingwall lost control of his e-bike and crashed into someone's yard, where he lay unconscious for two hours. *Id.* at 13. He suffered a broken rib, a head injury, and memory loss. *Id.* at 5. He "still [has] difficulties breathing and [his] rib is sticking out" as a result of the incident. *Id.* Dingwall had an "X-ray done and had to wear a[n] ACE bandage for a few weeks." *Id.* He seeks $25,000 in damages for his pain and suffering from that incident. *Id.*[5]

## II.   SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or

---

[5] Dingwall also says that he wants his "poss[ession] of [s]tolen [p]roperty criminal case with no merit dismissed." Docket Item 1 at 5. To the extent Dingwall asks this Court to dismiss any pending state criminal charges, the Court must abstain from exercising jurisdiction over any such claim. *See Younger v. Harris*, 401 U.S. 37, 45 (1971). In *Younger*, the Supreme Court endorsed "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). Under *Younger*, "district courts should abstain from exercising jurisdiction . . . in three 'exceptional circumstances' involving (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Falco v. Justs. of Matrim. Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)). And in deciding whether to abstain, a federal court may consider "[w]hether 'there is (1) an ongoing state judicial proceeding [that] (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges.'" *Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir. 2022) (second alternation in original) (quoting *Sprint*, 571 U.S. at 81).

Dingwall's request to have this Court dismiss the state criminal charges against him is the sort of request that is squarely barred by *Younger,* and the Court therefore declines to intervene. *See Sprint*, 571 U.S. at 72 ("When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution.").

laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S at 676). Moreover, the theory of respondeat superior is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

Section 1983 suits can be brought against government officials in both their official and individual capacities. As the Second Circuit has explained, "[i]n an official capacity suit, 'the real party in interest is the governmental entity and not the named official.'" *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) (alteration omitted) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)), *aff'd*, 592 U.S. 43 (2020). "By contrast, individual capacity suits 'seek to impose individual liability upon [ ] government officer[s] for actions under color of law.'" *Id*. (alterations omitted) (quoting *Hafer*, 502 U.S. at 25). And for its part, a municipality cannot be held liable under section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

7

Dingwall's claims are brought against several municipal defendants, along with two individual defendants—King and Mahmood.  Docket Item 1 at 2-3.  Dingwall brings claims against King and Mahmood in both their individual and official capacities.  *See id.*

### A.    Official Capacity Claims

As a preliminary matter, Dingwall has named several municipal entities as defendants in this action: the Niagara County Sheriff's Office, Niagara County Medical Department, Town of Lewiston Police Department, and Town of Niagara Police Department.  But those entities are not independent entities that can be sued; rather, they are administrative arms of, respectively, Niagara County, the Town of Lewiston, and the Town of Niagara.  "[A]dministrative arms of a municipal corporation[] do not have a legal identity separate and apart from the [municipal corporation]."  *Loria v. Town of Irondequoit,* 775 F. Supp. 599, 606 (W.D.N.Y. 1990) (citation omitted); *see also* N.Y. Gen. Mun. Law § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county, town, city and village.").  Those four entities therefore are not subject to suit and the case against them is dismissed.  *Sanchez-Martin v. Allegany Cnty. Jail,* 2012 WL 360014, at *2 (W.D.N.Y. Feb. 1, 2012); *see Loria,* 775 F. Supp. at 606.

Nevertheless, because Dingwall is proceeding pro se*,* the Court interprets his complaint liberally and therefore "construes the complaint as being brought against the [municipalities] themselves."  *Sanchez-Martin,* 2012 WL 360014, at *2 (citing *Warren v. Westchester Cnty. Jail,* 106 F. Supp. 2d 559, 561 (S.D.N.Y. 2000)).  The Clerk of the Court therefore shall amend the caption of this action, remove the Niagara County Sheriff's Office, Niagara County Medical Department, Town of Lewiston Police

Department, and Town of Niagara Police Department as parties, and add Niagara County, the Town of Lewiston, and the Town of Niagara as defendants.

Moreover, "it is well settled that 'a suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer is an agent.'" *Rech v. Siragusa*, 2023 WL 2559409, at *7 (W.D.N.Y. Mar. 3, 2023) (quoting *Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003)); *see also Beckwith v. Erie Cnty. Water Authority*, 413 F. Supp. 2d 214, 224-25 (W.D.N.Y. 2005) ("A claim against a government official in his official capacity is merely another way of asserting a claim against the governmental entity that employs the official." (citing *Monell*, 436 U.S. at 690 n.55)).  Therefore, Dingwall's official capacity claims against King and Mahmood, whom he suggests are employees of the police departments in the Town of Lewiston and the Town of Niagara, respectively, are redundant of his claims against the municipalities identified above and are dismissed.  *See Rech*, 2023 WL 2559409, at *7 (dismissing official capacity claims against individual "unidentified Monroe County Sheriffs" as redundant of claims against Monroe County).

Turning to the substance of Dingwall's official capacity claims, to state a claim against a municipality under section 1983, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.3d 393, 397 (2d Cir. 1983)).  "[A] municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials," such as "the persistent failure to discipline subordinates who violate [persons'] civil rights."  *Id*. (alteration in original) (second excerpt quoting *Batista*, 702 F.2d at 397).

9

Because Dingwall does not allege that any of the municipal defendants violated his constitutional rights based on an official custom, policy, or practice, his official capacity claims against those defendants are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim. But in light of his pro se status, *see Cuoco*, 222 F.3d at 112, Dingwall may file an amended complaint plausibly alleging, if possible, that the actions underlying his claims were taken under an official custom, policy, or practice of the Town of Lewiston, the Town of Niagara, or Niagara County.

### B.    Individual Capacity Claims

Dingwall does not specifically articulate any constitutional violation underlying his claims; instead, he generally alleges "ineffective right to counsel, failure due process, fundamental claims."  Docket Item 1 at 3.  But as noted above, the Court has a duty to construe Dingwall's complaint liberally to raise the strongest arguments it suggests. *See Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  Exercising that duty, the Court construes Dingwall's complaint as bringing the following claims against King and Mahmood in their individual capacities: a failure-to-protect claim against King arising from the death of Dingwall's brother, an excessive-force claim against Mahmood for the alleged hit-and-run, and assault and battery claims against Mahmood for that same incident.

###### 1.    Failure to Protect

Dingwall alleges that despite telling King and other unnamed individuals to check in on his brother, his brother passed away after no one checked in on him.[6]  *See* Docket Item 1 at 4-5, 12.  Construing Dingwall's complaint liberally, these allegations raise a possible due process claim involving the duty to protect.

The Fourteenth Amendment's Due Process Clause provides that a state shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  But, "[t]here is generally no . . . constitutional duty . . . requiring a government officer to investigate or protect an individual from harm."  *Stewart v. Malmandier*, 2026 WL 1008705, at *3 (S.D.N.Y. Apr. 14, 2026) (collecting cases); *see also Gong v. Sarnoff*, 2024 WL 3638335, at *7 (S.D.N.Y. Aug. 1, 2024) ("It is settled that the [s]tate has no general Due Process obligation to ensure the safety, care, and protection of individuals who are not in its custody.").

The Second Circuit nevertheless "has recognized two exceptions to this general principle."  *DeRouseau v. Martello*, 2022 WL 889182, at *2 (S.D.N.Y. Mar. 25, 2022).  "First, the state or its agents may owe a constitutional obligation to the victim of private violence if the state had a 'special relationship' with the victim."  *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008).  And "[s]econd, the state may owe such an

---

[6] To the extent Dingwall is seeking damages on his brother's behalf, he has not demonstrated his ability to do so pro se.  Nor has he commenced this action as the administrator of his brother's estate, in which case he would have the ability to represent the estate pro se only in limited circumstances.  *See Guest v. Hansen*, 603 F.3d 15, 21 (2d Cir. 2010) ("[T]he administrator and sole beneficiary of an estate with no creditors may appear pro se on behalf of the estate." (italics omitted)).    If Dingwall wishes to recover damages on behalf of his brother, any amended complaint should clarify his authority to do so.

11

obligation if its agents in some way had assisted in creating or increasing the danger to the victim." *Id.* (citation and internal quotation marks omitted).

Even if a plaintiff can show that he or she falls within either or both of those categories, the plaintiff also must demonstrate "that the government 'action was so 'egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco,* 432 F.3d 98, 112 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n.8 (1998)). "Thus, it is insufficient to allege that a state actor failed to protect an individual, even from a known danger of bodily harm or failed to warn that individual of such danger." *Chambers v. North Rockland Cent. Sch. Dist.,* 815 F. Supp. 2d 753, 763 (S.D.N.Y. 2011) (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 125-29 (1992)).

Here, Dingwall alleges that he told King and others at the Niagara County Jail about his brother, that he asked them to contact his family or a county agency about his brother, and that those individuals "said they would take care of it." Docket Item 1 at 4-5, 12. But Dingwall says that no one did anything, resulting in his brother's death. *Id.* at 4. Dingwall's claim—which he brings only on his own behalf—alleges that he was injured by his brother's death. *Id.* at 5.

That claim fails because the complaint does not allege that Dingwall falls under either of the two exceptions described above. First, because Dingwall identifies himself as the victim here and does not bring the claim on behalf of his brother's estate, any special relationship would be between Dingwall himself and King or the unidentified

12

officials whom he told to check in on his brother.[7]  But even presuming a special relationship between Dingwall and those individuals that existed by virtue of Dingwall's own detention, *see Matican v. City of New York*, 424 F. Supp. 2d 497, 504 (E.D.N.Y. 2006) ("[A] constitutionally significant special relationship generally involves some type of custody or other restraint on individuals' ability to fend for themselves."), *aff'd*, 524 F.3d 151 (2d Cir. 2008), that relationship "cannot be said to extend beyond the prison walls all the way to his family," *Garrett v. Belmont Cnty. Sheriff Dep't*, 2008 WL 2511039, at *5 (S.D. Ohio June 19, 2008), *report and recommendation adopted*, 2008 2705465 (S.D. Ohio July 9, 2008);[8] *see also id.* ("[T]hough [plaintiff] has a duty to protect his wife and children, the prison system does not assume that duty simply because an inmate can no longer perform it from captivity.").  Moreover, even if Dingwall raised the issue of checking on his brother when Dingwall was taken into custody, that still does not amount to the state's creating a specific risk to Dingwall that he would endure pain and suffering from his brother's possible death.  *See id.* (state-created risk exception did not apply in case where, before his wife's suicide, detained plaintiff told jail officials about his wife's suicide threats and asked them to help her).

---

[7] Dingwall does not name as a defendant any one individual whom he told to check in on his brother other than King.  If Dingwall intends to bring claims against any other individuals, he should specifically identify them in any amended complaint.

[8] The Sixth Circuit reversed the district court in *Garrett*, pointing to additional allegations contained in the plaintiff's objections to the initial report and recommendation that noted that his wife also had been in custody, including at a mental institution, prior to her suicide.  *Garrett v. Belmont Cnty. Sheriff's Dep't*, 374 F. App'x 612, 615-619 (6th Cir. 2010).  But because the Sixth Circuit's analysis focused on the fact that "it seem[ed] apparent . . . that the state maintained authority to confine" his wife prior to her suicide, *id.* at 618—reasoning that does not apply here—that reversal does not change the Court's conclusion.

And even if Dingwall could show that either exception applies, he does not allege anything close to conduct so "egregious" or "outrageous," that it "shock[s] the contemporary conscience." *Pena,* 432 F.3d at 112 (citation and internal quotation marks omitted); *cf. Lewis*, 523 U.S. at 849 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

The complaint as currently pleaded therefore fails to plausibly allege a failure-to-protect claim against King or anyone else, and that claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). In light of Dingwall's pro se status, however, *see Cuoco*, 222 F.3d at 112, he may amend his complaint to plead facts alleging a viable claim against King (or any other defendant) as described above.

### 2.     Excessive Force

The Court turns next to Dingwall's allegation that Mahmood, after telling Dingwall that he was free to go, intentionally hit him with her police vehicle while Dingwall was riding his e-bike. *See* Docket Item 1 at 4-5, 13. Because Dingwall alleges that Mahmood drove away after she hit him, Mahmood apparently did not strike Dingwall in order to arrest him. In other words, the complaint suggests that Dingwall was not a suspect fleeing arrest when Mahmood struck him. The Court therefore construes this claim as arising under the Fourteenth Amendment, not under the Fourth Amendment. *Compare Piper v. City of Elmira*, 12 F. Supp. 3d 577, 587 (W.D.N.Y. 2014) ("Where the claim arises outside the context of an arrest or a seizure by law enforcement officials, allegations of excessive force are analyzed under the Due Process Clause of the Fourteenth Amendment.") *and Tierney v. Davidson,* 133 F.3d 189, 199 (2d Cir.1998) ("Plaintiffs do not assert that they were arrested or seized, and therefore these claims

14

fall outside [] the Fourth Amendment protections . . . , and are governed instead by the Due Process Clause of the Fourteenth Amendment" (internal citation omitted)), *with Hartman v. County of Nassau*, 350 F. App'x 477, 479 (2d Cir. 2009) (summary order) (applying Fourth Amendment where police officer purposely drove into *suspect* fleeing on foot) *and Robinson v. City of New York*, 2018 WL 4344949, at *4 (E.D.N.Y. Sep. 11, 2018) ("[A] seizure occurs [under the Fourth Amendment] when the police stop a *suspect* by intentionally applying force that impedes his or her movement." (emphasis added)).

"[A] Fourteenth Amendment substantive due process approach . . . requires a showing that the amount of force used was such as to offend even hardened sensibilities or brutal and offensive to human dignity." *Schy v. Vermont,* 2 F. App'x 101, 102 (2d Cir. 2001) (summary order) (citation and internal quotation marks omitted). The "substantive due process guarantee of the Fourteenth Amendment protects individuals from 'conscience-shocking' exercises of power by government actors." *Johnson v. Newburgh*, 239 F.3d 246, 252 (2d Cir. 2001) (citing *Lewis,* 523 U.S. at 847); *United States v. Salerno,* 481 U.S. 739, 746 (1987); *Rochin v. California,* 342 U.S. 165, 172 (1952); *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994)).

To determine whether an officer's conduct "shocks the conscience," courts apply a four-part test:

> [1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [3] the extent of the injury inflicted, and [4] whether force was applied in a good faith effort to maintain

or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Tierney,* 133 F.3d at 199 (alternations in original) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Piper*, 12 F. Supp. 3d at 587 (applying same four-part test to determine whether officer's use of force shocked the conscience).

Broadly construed, the complaint alleges that Mahmood intentionally and gratuitously struck Dingwall with her vehicle after she told him that he was free to leave. *See* Docket Item 1 at 4-5, 13. Under those circumstances, there certainly was no basis for the use of force—that is, using a police vehicle to strike Dingwall. Those allegations—accepted as true as the Court must at this stage—plausibly raise a Fourteenth Amendment excessive-force claim against Mahmood in her individual capacity, and that claim therefore may proceed to service. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (explaining that dismissal under Federal Rule of Civil Procedure 12(b)(6) still may be appropriate notwithstanding a court's earlier finding that the complaint was not "frivolous" for purposes of section 1915(e)(2)).

### 3.    State Law Claims

The Court also construes Dingwall's allegations against Mahmood as raising claims for assault and battery under New York State law. *See Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 323 (W.D.N.Y. 2018) ("The Court has not found any case that recognizes either an assault or a battery claim grounded in [section] 1983."); *see also Henderson v. Williams*, 2013 WL 1984545, at *3 n.3 (D. Conn. May 13, 2013) ("[T]here is no federal common law claim for assault or battery."). "New York [State] defines assault as an intentional placing of another person in fear of imminent harmful or offensive contact and civil battery as an intentional wrongful physical contact with

16

another person without consent." *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) (alteration, citation, and internal quotation marks omitted). "[T]o establish a civil battery [claim,] a plaintiff need only prove intentional physical contact by [the] defendant without [the] plaintiff's consent; the injury may be unintended, accidental[,] or unforeseen." *Hughes v. Farrey*, 30 A.D.3d 244, 247, 817 N.Y.S.2d 25, 28 (1st Dep't 2006) (quoting *Tower Ins. Co. of New York v. Old N. Blvd. Rest. Corp.*, 245 A.D.2d 241, 242, 666 N.Y.S. 2d 636, 636 (1st Dep't 1997)).

Again, at this early stage, Dingwall's allegations that Mahmood pursued and struck him with her police vehicle also plausibly raise state law assault and battery claims. Those claims therefore survive screening and may proceed. *See Pino*, 49 F.3d at 53.

### CONCLUSION

Because Dingwall meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization, the Court grants his motion to proceed in forma pauperis. And for the reasons stated above, Dingwall's assault, battery, and Fourteenth Amendment excessive-force claims against Mahmood in her individual capacity may proceed to service. But his failure-to-protect claim against King in his individual capacity, and his official capacity claims against Niagara County, the Town of Lewiston, and the Town of Niagara, are dismissed with leave to amend. Finally, Dingwall's official capacity claims against King and Mahmood are dismissed as redundant.

Dingwall is advised that an amended complaint is intended to **completely replace** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)*; see also*

17

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint ***must include all allegations against each of the defendants*** so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

## ORDER

For the reasons stated above, it is

ORDERED that Dingwall's motion to proceed in forma pauperis, Docket Item 5, is GRANTED; and it is further

ORDERED that Niagara County, the Town of Niagara, and the Town of Lewiston are substituted as defendants in place of the Niagara County Sheriff's Office, the Niagara County Medical Department, the Town of Niagara Police Department, and Town of Lewiston Police Department; and it is further

ORDERED that Dingwall's official capacity claims against King and Mahmood are dismissed as redundant; and it is further

ORDERED that Dingwall's claims against Niagara County, the Town of Niagara, and the Town of Lewiston, along with his individual capacity failure-to-protect claim against King, are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim but with leave to amend; and it is further

ORDERED that Dingwall's Fourteenth Amendment excessive-force and state law assault and battery claims against Mahmood in her individual capacity may proceed to service; and it is further

18

ORDERED that Dingwall may file an amended complaint as directed above no later than **45 days after the date of this order**; and it is further

ORDERED that the Clerk of the Court shall send to Dingwall with this order a copy of the original complaint, a blank section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Dingwall does not file an amended complaint **within 45 days of the date of this order**, the Clerk of the Court shall cause the United States Marshals Service to serve copies of the summons, the complaint, and this order upon Mahmood, without Dingwall's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in Dingwall's favor;[9] and it is further

ORDERED that under *Valentin v. Dinkins*, 121 F.3d 72 (1997) (per curiam), the Town of Niagara shall ascertain the full name, with correct spelling, and last known service address of Officer A. Mahmood within 30 days of the date of this order. The Town of Niagara need not undertake to defend or indemnify Mahmood at this time. Rather, this order merely provides a means by which Dingwall may name and properly serve Mahmood as instructed by the Second Circuit in *Valentin*. The Town of Niagara shall produce the information specified above by mail (addressed to Pro Se Litigation Unit, United States District Court, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York 14202) within 30 days of the date of this order. Upon receipt of this information, the Clerk of the Court shall amend the caption of this action to reflect Mahmood's full name. If the *Valentin* response includes personally

---

[9] If Dingwall files an amended complaint as directed in this order, service will be deferred until the Court has screened the amended complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)-(b).

identifiable information such as a home address, that contact information shall be given to the United States Marshals Service solely for the purpose of effecting service and that information shall otherwise remain confidential; and it is further

ORDERED that the Clerk of the Court shall forward a copy of this order and the complaint by email to the Town of Niagara at info@townofniagarany.gov and Michael Risman, Town Attorney, at mrisman@hodgsonruss.com; and it is further

ORDERED that Dingwall shall notify the Clerk of Court in writing if his address changes. The Court may dismiss the action if Dingwell fails to do so.


SO ORDERED.

Dated:   May 12, 2026
          Buffalo, New York




                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE

20